**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE APPLICATION OF EURASIAN :
NATURAL RESOURCES CORP. LTD. : Case No.
 :
    Petitioner, :
 :
 :
for an order pursuant to 28 U.S.C. § 1782 to :
conduct discovery for use in a foreign :
proceeding. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

# MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING

MORVILLO ABRAMOWITZ GRAND
 IASON & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017
Tel: (212) 856-9600

CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Ave. NW
Washington, D.C. 20037
Tel: (202) 974-1500
Fax: (202) 974-1999

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ........................................................................................................ 4

    A.    Mr. Hollingsworth Obtained ENRC Confidential and Privileged
           Information ....................................................................................... 4

    B.    After Obtaining ENRC Confidential and Privileged Information from
           Mr. Trevelyan and Others, Mr. Hollingsworth Disseminated Some or All of That
           Information to Mr. Simpson ............................................................. 7

    C.    The Requested Discovery Is Sought for Use in the English Proceeding ............. 15

ARGUMENT .......................................................................................................... 19

I.    ENRC Satisfies the Statutory Requirements of Section 1782 ......................... 19

    A.    Mr. Simpson Resides and Is Found in this District .............................. 19

    B.    The Discovery Sought Is for Use in a Proceeding Before a Foreign Tribunal ..... 20

    C.    ENRC Is an "Interested Person" for Purposes of the Foreign Proceeding .......... 22

II.    The Four Discretionary Factors All Weigh in Favor of Granting ENRC's Requested
    Discovery ....................................................................................... 22

    A.    Mr. Simpson Is Not a Party to the English Proceeding ........................ 23

    B.    The English Court Likely Would Be Receptive to the Requested Discovery ...... 24

    C.    ENRC Is Not Circumventing Any U.K. Proof-Gathering Restrictions ............... 25

    D.    ENRC's Discovery Requests Are Narrowly Tailored and Are Not Unduly
           Intrusive or Burdensome ................................................................. 26

CONCLUSION ....................................................................................................... 27

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664 (9th Cir. 2002), *aff'd*, 542 U.S. 241 (2004) ............................................................................................................................. 23

*Al Fayed v. United States*, 210 F.3d 421 (4th Cir. 2000) ............................................................. 19

*Euromepa, S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095 (2d Cir. 1995) .............................................. 24

*Goenechea v. Davidoff*, No. 15-cv-3384, 2016 WL 560689 (D. Md. Feb. 11, 2016) ................. 19

*Gushlak v. Gushlak*, 486 F. App'x 215 (2d Cir. 2012) .................................................................. 1

*In re Application of Hill*, No. 05-cv-999996, 2007 WL 1226141 (S.D.N.Y. Apr. 23, 2007) ....... 25

*In re Application of Sauren Fonds-Select SICAV v. For Discovery Pursuant to 28 U.S.C. § 1782*, No. 16-cv-00133, 2016 WL 6304438 (D.N.J. Oct. 26, 2016) ................................................... 23

*In re Application of Sveaas*, 249 F.R.D. 96 (S.D.N.Y. 2008) ....................................................... 21

*In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37 (2d Cir. 2017) ............................... 25

*In re Chevron Corp.*, 753 F. Supp. 2d 536 (D. Md. 2010) ........................................................... 21

*In re Chevron Corp.*, No. 10-mc-00067, 2010 WL 4883111 (W.D. Va. Nov. 24, 2010) ........... 25

*In re DiGiulian*, 314 F. Supp. 3d 1 (D.D.C. 2018) ...................................................................... 1

*In re Edelman*, 295 F.3d 171 (2d Cir. 2002) ................................................................................ 19

*In re Ex Parte Application of Global Energy Horizons Corp.*, No. 15-cv-80078, 2015 WL 1325758 (N.D. Cal. Mar. 24, 2015) ......................................................................................... 25

*In re IKB Deutsche Industriebank AG*, No. 09-cv-7852, 2010 WL 1526070 (N.D. Ill. Apr. 8, 2010) .......................................................................................................................................... 25

*In re Polymer Solutions Int'l, Inc.*, No. 18-cv-1864, 2019 WL 1239778 (D. Md. Mar. 18, 2019) .................................................................................................................................................... 19

*In re Porsche*, No. 15-mc-417, 2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) .............................. 1

*In re Republic of Ecuador*, No. 10-cv-00040, 2010 WL 4027740 (E.D. Cal. Oct. 14, 2010) ...... 20

*In re Veiga*, 746 F. Supp. 2d. 8, 17-18 (D.D.C. 2010) ......................................................... passim

*In re Ex Parte Application Varian Med. Sys. Int'l AG*, No. 16-mc-80048, 2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) ........................................................................................... 1

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ............................................ 20

*John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132 (3d Cir. 1985) .................................................... 23

*Kulzer v. Esschem, Inc.*, 390 Fed. App'x 88 (3d Cir. 2010) ......................................................... 25

*La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358 (S.D.N.Y. 2014) ....... 25

*Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015) ............................................................................... 20

*Oncology Foundation v. Avanza Dev. Servs., LLC*, No. 17-cv-1445, 2017 WL 2376769 (D. Md. May 30, 2017) ........................................................................................................................ 1

*Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101 (N.D. Cal. 2018) .............................................. 20

## **Statutes**

28 U.S.C. § 1782 ...................................................................................................................Passim

Petitioner Eurasian Natural Resources Corporation Limited ("ENRC") respectfully submits this memorandum of law, along with the accompanying Declaration of Justin Michaelson, in support of its *ex parte* application for an order, pursuant to 28 U.S.C. § 1782 ("Section 1782"), to take discovery from Glenn Simpson for use in a foreign proceeding ("Petition").[1]

## PRELIMINARY STATEMENT

This application stems from the unlawful dissemination of confidential business or legally privileged information belonging or relating to ENRC ("ENRC Confidential and Privileged Information"). ENRC is the parent company of a diversified natural resources group consisting of numerous subsidiaries and associated entities operating on an international scale. At all times relevant to this Petition, ENRC's activities included mining operations (including

---

[1] Section 1782 applications routinely are granted on an *ex parte* basis, including by courts in this District. *See, e.g.*, *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*."); *Oncology Found. v. Avanza Dev. Servs., LLC*, No. 17-cv-1445, 2017 WL 2376769, at *2 (D. Md. May 30, 2017) (granting Section 1782 application *ex parte*); *In re DiGiulian*, 314 F. Supp. 3d 1, 9 (D.D.C. 2018) (same). Any issues concerning the propriety of the discovery sought, including whether it meets the requirements of Section 1782, can be addressed by Mr. Simpson on a motion to quash, or in response to a motion to compel. *See Gushlak*, 486 F. App'x at 217 ("The respondent . . . can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)."); *In re Ex Parte Application of Porsche Automobil Holding SE*, No. 15-mc-417, 2016 WL 702327, at *1 n.3 (S.D.N.Y. Feb. 18, 2016) ("As typically or, at least, frequently is the case in § 1782 proceedings, leave to serve the subpoenas was granted *ex parte*, which is appropriate because all questions with respect to the propriety of the grant of leave and with respect to the content [of] the subpoenas are available to every subpoenaed party via a motion to quash or the defense of an application to compel compliance with the subpoenas."); *In re Ex Parte Application Varian Med. Sys. Int'l AG*, No. 16-mc-80048, 2016 WL 1161568, at *2 (N.D. Cal. Mar. 24, 2016) ("[O]rders granting § 1782 applications typically only provide that discovery is 'authorized,' and thus the opposing party may still raise objections and exercise its due process rights by challenging the discovery after it is issued via a motion to quash, which mitigates concerns regarding any unfairness of granting the application *ex parte*."). Accordingly, Mr. Simpson suffers no prejudice if ENRC's Section 1782 application is granted *ex parte*.

extensive mining operations in Kazakhstan), as well as energy, processing, and logistics operations. ENRC was founded—and currently is majority-owned—by three businessmen, Alexander Mashkevich, Alijan Ibragimov, and Patokh Chodiev, who sometimes are referred to collectively as the "Trio."

Much of the ENRC Confidential and Privileged Information that was improperly disseminated consists of information that was obtained directly from ENRC by a computer forensics expert, Robert Trevelyan, when he was granted access to ENRC's premises and computer network to perform information technology ("IT") and data collection projects (collectively, the "IT Projects"). After obtaining ENRC Confidential and Privileged Information, Mr. Trevelyan unlawfully retained it without ENRC's knowledge or authorization. Thereafter, Mr. Trevelyan disseminated portions of the ENRC Confidential and Privileged Information to Mark Hollingsworth, a London-based professional intermediary (*i.e.*, an individual in the private intelligence field who obtains, trades, and sells confidential or otherwise non-public information).

On October 21, 2019, ENRC commenced a lawsuit against Mr. Hollingsworth in the United Kingdom for "breach of confidence," arising out of his alleged unlawful receipt of ENRC Confidential and Privileged Information (the "English Proceeding"). As relevant to its breach of confidence claim in the English Proceeding, ENRC has obtained evidence indicating that, after acquiring ENRC Confidential and Privileged Information from Mr. Trevelyan, Mr. Hollingsworth further disseminated some or all of that information to Glenn Simpson, a resident of Saint Leonard, Maryland. ENRC has also obtained evidence indicating that Mr. Hollingsworth disseminated to Mr. Simpson ENRC Confidential and Privileged Information that he obtained from sources other than Mr. Trevelyan. Through this Petition, ENRC seeks

discovery from Mr. Simpson regarding his receipt of ENRC Confidential and Privileged Information from Mr. Hollingsworth.  ENRC also seeks discovery from Mr. Simpson regarding what he did with the ENRC Confidential and Privileged Information that he received from Mr. Hollingsworth.  As explained below, the information that ENRC is seeking from Mr. Simpson is relevant to establishing—and will be used by ENRC to establish—both liability and damages as to Mr. Hollingsworth in the English Proceeding.

Since 2010, Mr. Simpson, a former investigative reporter for the *Wall Street Journal*, has run a research/business intelligence firm called Fusion GPS, where he has specialized in obtaining information for his clients.  As demonstrated below, on multiple occasions since at least 2011, Mr. Simpson has sought to obtain non-public information concerning ENRC, its related companies, and/or the Trio from Mr. Hollingsworth.  ENRC has obtained compelling evidence that in response—from at least 2011 onwards—Mr. Hollingsworth disclosed ENRC Confidential and Privileged Information to Mr. Simpson.

ENRC seeks the requested discovery for use in the English Proceeding.  For the reasons set forth below, ENRC respectfully submits that the Petition should be granted.  *First*, the Petition meets the statutory requirements for a Section 1782 application because (1) Mr. Simpson "resides" and is "found" in this District, (2) the discovery sought is "for use" in a "foreign proceeding" (*i.e.*, the English Proceeding), and (3) ENRC is a party to—and thus an "interested person" in—the foreign proceeding.  *Second*, the discretionary factors that courts consider in determining whether to authorize discovery pursuant to Section 1782 all favor granting this application, as (1) Mr. Simpson is not a participant in the foreign proceeding, (2) U.K. courts generally are receptive to the use of Section 1782 as a means for U.K. litigants to obtain discovery, (3) the instant Petition is not an attempt to circumvent any proof-gathering restrictions

of the U.K. court adjudicating the English Proceeding (the "English Court"), and (4) the

discovery sought is not unduly intrusive or burdensome.

## **BACKGROUND**

### A.     **Mr. Hollingsworth Unlawfully Obtained ENRC Confidential and Privileged Information**

From in or around 2007 to in or around 2012, in the course of performing various IT

Projects for ENRC, Mr. Trevelyan acquired—and then unlawfully retained—an extensive

amount of data containing or comprising ENRC Confidential and Privileged Information (the

"ENRC Dataset").  Michaelson Decl. ¶ 10.[2]  For example, in or around 2011, Mr. Trevelyan was

given access to ENRC servers and computers to collect internal ENRC data for purposes of an

internal investigation that ENRC was conducting under the supervision of its then external legal

counsel, which was prompted by ENRC's receipt in 2010 of an email sent by an anonymous

whistleblower (the "2010 Whistleblower Email") raising concerns in connection with one of

ENRC's subsidiaries, JSC Sokolov-Sarybai Mining Production Association ("SSGPO").  *Id.* ¶ 8.

In connection with that work, Mr. Trevelyan collected, and then unlawfully retained,

approximately 15 terabytes of raw data.  *Id.*

The ENRC Dataset that Mr. Trevelyan unlawfully retained included, among other things:

(1) documents generated in respect of completed and prospective corporate transactions; (2) due

diligence reports; (3) business analysis and strategy reports; (4) internal communications

between officers, employees, and agents of ENRC; (5) external communications between

officers, employees, and agents of ENRC and third parties (such as suppliers, customers,

contractors, business partners, banks, and professional advisors); (6) minutes and records of

---

[2] Citations in the form "Michaelson Decl. ¶ __" refer to the Declaration of Justin Michaelson,
which is being submitted herewith.

Board meetings; (7) communications with regulators; (8) financial statements; (9) internal audits, and (10) documents generated for purposes of ongoing or anticipated legal proceedings and/or containing legal advice received by ENRC and its subsidiaries from its legal advisors. *Id.* ¶ 11. In many cases, such information was confidential to ENRC, and in some instances, also legally privileged. *Id.* Accordingly, ENRC understands the ENRC Dataset to have contained significant quantities of ENRC Confidential and Privileged Information. *Id.*

From at least 2011 onwards, Mr. Trevelyan disclosed a subset of the ENRC Confidential and Privileged Information contained within the ENRC Dataset to Mr. Hollingsworth, the defendant in the English Proceeding. *Id.* ¶ 12. As set forth above, Mr. Hollingsworth is a professional intermediary, and a resident of London, England. *Id.* ¶ 1.

Mr. Hollingsworth first met Mr. Trevelyan in or around early 2009. *Id.* ¶ 28. Over the years, Messrs. Hollingsworth and Trevelyan have both performed work relating to Kazakhstan in general and ENRC in particular, and Kazakhstan and ENRC have been frequent topics of discussion between them. *Id.*

In the course of Mr. Hollingsworth's discussions with Mr. Trevelyan (if not before), Mr. Hollingsworth became aware that Mr. Trevelyan had performed, or was still performing, IT Projects for ENRC and that Mr. Trevelyan had ongoing access to ENRC Confidential and Privileged Information. *Id.* ¶ 29. From in or about 2010 onwards, Mr. Hollingsworth: (1) regularly met and liaised with Mr. Trevelyan in connection with projects relating to ENRC, its related companies, and/or the Trio that he was undertaking on behalf of his clients and/or prospective clients; (2) asked Mr. Trevelyan to provide him with ENRC Confidential and Privileged Information; and (3) provided some or all of the ENRC Confidential and Privileged Information that he obtained from Mr. Trevelyan to his clients, prospective clients, and/or other

third parties, including, as discussed below, Mr. Simpson. *Id.* ¶ 30. Mr. Hollingsworth took measures to protect the identity of Mr. Trevelyan as one of his sources, including by using pseudonyms when referring to him. *Id.* ¶ 31. For example, in written communications, Mr. Hollingsworth referred to Mr. Trevelyan as "Magic." *Id.*

ENRC has also obtained evidence that Mr. Hollingsworth acquired additional ENRC Confidential and Privileged Information—not derived from the ENRC Dataset—from sources other than Mr. Trevelyan. *Id.* ¶ 32. Such sources included (1) other professional intermediaries and (2) one or more sources within the United Kingdom's Serious Fraud Office ("SFO"), which was conducting an investigation into ENRC during the time period relevant to this Petition. *Id.*; *see id.* at Ex. 1 (the Complaint in the English Proceeding) ¶¶ 21-23 & Annexes B and C (describing evidence indicating that Mr. Hollingsworth acquired ENRC Confidential and Privileged Information from other professional intermediaries and sources within the SFO).

For example, in or around August 2011, Mr. Hollingsworth acted as a conduit to pass copies of certain confidential (and, in at least two instances, legally privileged) documents to a journalist working at *The Times* newspaper of London, in the circumstances set out in paragraphs 17 and 18 of the Complaint in the English Proceeding. *Id*. ¶ 14; *see id.* at Ex. 1 ¶¶ 17-18. Those documents—which initially were leaked by one of ENRC's then external legal counsel to a third party, for the purpose of procuring their publication, and given to Mr. Trevelyan, who then passed them on to Mr. Hollingsworth—were thereafter retained by Mr. Hollingsworth (the "2011 Leaked Material"). *Id.* ¶ 14.[3]

---

[3] Save insofar as the content of the 2011 Leaked Material has entered the public domain, those documents remain privileged and no reliance is placed on their substantive content in this Petition.

**B.**     **After Obtaining ENRC Confidential and Privileged Information from Mr. Trevelyan and Others, Mr. Hollingsworth Disseminated Some or All of that Information to Mr. Simpson**

From in or about the mid-1990s to in or about 2009, Mr. Simpson was an investigative reporter for various news outlets, including the *Wall Street Journal*. *Id.* ¶ 15.  In or about 2009, Mr. Simpson became a partner of a research and business intelligence firm called SNS Global. *Id.*  In or about 2010, Mr. Simpson closed SNS Global and founded a new research/business intelligence firm called Fusion GPS.  *Id.*  Since in or about 2009, through SNS Global and Fusion GPS, Mr. Simpson has been conducting research—and obtaining information—on behalf of the clients of those firms.  *Id.*

From at least 2011 onwards, Mr. Simpson sought—on multiple occasions—to obtain non-public information concerning ENRC, its related companies, and/or the Trio from Mr. Hollingsworth.  *Id.* ¶ 33.  As demonstrated below, in response and during at least the period from in or around 2011 to in or around 2013, Mr. Hollingsworth disclosed ENRC Confidential and Privileged Information to Mr. Simpson.  *See id.* ¶¶ 35-58.

1.     In 2011, Mr. Hollingsworth provided Mr. Simpson with ENRC Confidential and Privileged Information

By no later than July 2011, Mr. Simpson had asked Mr. Hollingsworth to provide him with a summary of the non-public information to which Mr. Hollingsworth had access relating to ENRC.  *See id.* ¶ 35.  Indeed, following a number of meetings, emails, and calls with Mr. Simpson, on July 28, 2011, Mr. Hollingsworth sent an email to Mr. Simpson (in response to a request by Mr. Simpson) attaching "a detailed summary of the documents available on the disc that [he and Mr. Simpson had] discussed last week in London."  The attached "detailed summary" contained a list of 100 items or topics pertaining to ENRC and related matters, including: a "[m]emo detailing assets of ENRC shareholders – Chodiev, Ibragrimov [sic] and

7

Mashkevich"; letters, emails, and communications between current and past employees and members of ENRC's Board of Directors; bank account information and financial documents; internal "policy" and "strategy" documents; and due diligence reports.  *Id.*

Mr. Hollingsworth's daily planner ("diary") reflects that, in the days before sending his July 28, 2011 email, he corresponded and met with Mr. Simpson, presumably to determine the types of non-public, ENRC-related documents Mr. Simpson was interested in obtaining:

- Mr. Hollingsworth's diary for July 21, 2011 contains the entries, "E-MAIL . . . GLENN – MEET TODAY" and "8 – Glenn – Curzon Street"—with a check mark in the diary adjacent to the entry "E-Mail . . . GLENN – MEET TODAY"—indicating that on July 21, 2011, Mr. Hollingsworth met Mr. Simpson at an address on Curzon Street in London.  *Id.* ¶ 36(a).

- Mr. Hollingsworth's diary for the following day, July 22, 2011, contains the entry, "CALL GLENN SIMPSON," with a check mark adjacent to it.  On that same day, Mr. Hollingsworth's diary also records meetings with Mr. Simpson at 2:00 pm and 7:00 pm.  *Id*. ¶ 36(b).

- Two days later, on July 24, 2011, Mr. Hollingsworth emailed Mr. Simpson informing Mr. Simpson that he (Mr. Hollingsworth) would "compile a summary of the vast archive of docs and e-mail it to you."  *Id*. ¶ 36(c).

- Four days later, Mr. Hollingsworth sent Mr. Simpson the July 28, 2011 email in which he referenced the ENRC-related documents that he could provide to Mr. Simpson.[4]  *Id*. ¶ 36(d).

---

[4] Shortly thereafter, on August 9, 2011, Mr. Hollingsworth emailed Mr. Simpson to direct his attention to an "article on ENRC in the Business section of 'The Times.'"  Michaelson Decl. ¶ 37.  Mr. Hollingsworth then added, "It's a shame that we missed out, but there is a lot of material

A few weeks later, on August 23, 2011, Mr. Hollingsworth sent an email to Mr. Simpson titled "Proposal on ENRC," in which Mr. Hollingsworth further detailed the information regarding ENRC that he either had in his possession or could obtain for Mr. Simpson. *Id.* ¶ 38. Mr. Hollingsworth described the information as being for a "prospective client" of Mr. Simpson. *Id*. In that email, Mr. Hollingsworth included an itemized list of documents that Mr. Hollingsworth could provide, including: documents pertinent to the "financial affairs" of one of ENRC's shareholders; confidential internal correspondence of ENRC's Board of Directors; "hundreds of pages" of confidential reports by ENRC's external legal counsel regarding an internal investigation; and confidential documents pertaining to ENRC's business activities in Africa. *Id.* Mr. Hollingsworth attached to the email the same "detailed summary" of documents that he had attached to his July 28, 2011 email discussed above. *Id.*

Approximately three weeks later, on September 16, 2011, Mr. Hollingsworth emailed Mr. Simpson to discuss "some positive developments" regarding ENRC. *Id.* ¶ 39. Specifically, Mr. Hollingsworth wrote, "If you are meeting the client on ENRC tomorrow (Saturday) or Monday, please can we meet or at least speak before you[r] meeting, because there have been some positive developments that make a three month deal much more attainable." *Id.*

Approximately two weeks later, on October 4, 2011, Mr. Hollingsworth sent Mr. Simpson an email in which he stated, "I will send you the ENRC shopping list today (Tues)." *Id.* ¶ 41. Mr. Hollingsworth confirmed that he had "a complete inside track, including current developments on the board and lots of other juicy material . . . ." *Id.*

---

that was not published in the story." *Id.* He concluded by stating, "Please call me to discuss and let me know when you are next in London because there is lots of other Kazakh business to be done, if you are interested." *Id.*

9

Later that day, Mr. Hollingsworth sent a follow-up email to Mr. Simpson with the subject "My shopping list," which contained a list of 10 items, including the following documents: (1) a "[d]etailed report on the internal investigations" into an ENRC subsidiary; (2) "[c]opies of . . . reports by [of internal investigations] by . . . three major UK law firms"; (3) a copy of the 2010 Whistleblower Email; (4) a copy of a confidential internal email sent by Paul Judge, a director and aspiring chairman of ENRC, to other ENRC directors; and (5) "[d]etails of thousands of other internal ENRC documents – 2004-2008." *Id* ¶ 42.

Many of the specific categories of information that Mr. Hollingsworth listed in his July 28, August 23, and October 4, 2011 emails (and attachments) appear to match, or be encompassed within, categories of information that would have been included in (1) the ENRC Dataset and/or (2) the 2011 Leaked Material (including with respect to the latter, items 2 and 3 of the above "shopping list"). *Id.* ¶ 43; *see id.* ¶¶ 11 (describing the contents of the ENRC Dataset), 35, 38, and 42 (describing the categories of information listed in Mr. Hollingsworth's July 28, August 23, and October 4, 2011 emails); ¶ 43 (identifying two categories of information listed in Mr. Hollingsworth's October 4, 2011 email that were included in the 2011 Leaked Material). Moreover, on their face, most or all of the categories of information that Mr. Hollingsworth listed in his July 28, August 23, and October 4, 2011 emails (and attachments) comprise or contain ENRC Confidential and Privileged Information. *Id.*

A few weeks later, on October 19, 2011, Mr. Simpson emailed Mr. Hollingsworth and another professional intermediary who was working with Mr. Hollingsworth, Alex Yearsley, to inform them that the ENRC "project is on hold," to which Mr. Hollingsworth responded by email dated October 20, 2011, stating, "That's a real shame because I have an inside track with documents and we could clean up. . . . Please let me know when you are ready to roll . . . ." *Id.* ¶

10

45.  The next day, however, on October 21, 2011, Mr. Hollingsworth emailed Mr. Yearsley,

stating "It appears that Glenn's case on ENRC is now back on . . . ."  *Id.* ¶ 46.

Subsequent emails between Messrs. Hollingsworth and Simpson, as well as entries in Mr.

Hollingsworth's diary, indicate that (1) Mr. Simpson thereafter engaged Mr. Hollingsworth to

provide him with non-public information regarding ENRC, its related companies, and/or the

Trio; and (2) in connection with that engagement, Mr. Hollingsworth provided Mr. Simpson with

ENRC Confidential and Privileged Information:

- On October 25, 2011, Mr. Hollingsworth emailed Mr. Simpson thanking him "for
  [his] message," stating that what Mr. Simpson had conveyed in his message was
  "great news," and suggesting that they "talk on the phone today."  *Id.* ¶ 47(a).

- Mr. Hollingsworth's diary for the following day, October 26, 2011, contains an entry,
  "CALL . . . GLENN SIMPSON – ENRC," with a check mark adjacent to it.  *Id.* ¶
  47(b).

- Mr. Hollingsworth's diary reflects that two weeks later, on November 16, 2011, he
  met Mr. Simpson in London.  *Id* ¶ 47(c).

- Mr. Hollingsworth's diary for November 29, 2011 contains an entry stating, "SCAN
  DOC → GLENN," with a check mark adjacent to it.  *Id* ¶ 47(d).

- The next day, on November 30, 2011, Mr. Simpson sent an email to Mr.
  Hollingsworth in which he stated, "I have to brief client orally on Monday morning in
  DC.  Need a current roundup, including especially whatever we have on Felix."  *Id*. ¶
  47(e).  Two days later, on December 2, 2011, Mr. Hollingsworth emailed Mr.
  Simpson back, stating, "I will e-mail you the current round-up plus Felix material at

about 4 pm-ish UK time i.e., 11 am your time." *Id.* The reference to "Felix"

presumably was to Felix Vulis, ENRC's then Chief Executive Officer. *Id.*

- Mr. Hollingsworth's diary for December 2, 2011 states "E-MAIL GLENN SIMPSON
  – INTERIM REPORT." *Id* ¶ 47(f).

- Shortly thereafter, on December 10, 2011, Mr. Hollingsworth emailed Mr. Simpson
  again, stating, "*I hope you were satisfied with all my material and the documents and
  we have now satisfied the mandate*. . . . Please let me know if there is anything else
  you need for this project . . . ." *Id.* ¶ 47(g) (emphasis added).

> 2.    In 2012 and 2013, Mr. Hollingsworth continued to provide Mr. Simpson
>       with ENRC Confidential and Privileged Information

In 2012 and 2013, Mr. Simpson continued to request—and receive—non-public

information from Mr. Hollingsworth regarding ENRC, its related companies and/or the Trio. *Id.*

¶ 48. For example, on January 8, 2012, Mr. Simpson emailed Mr. Hollingsworth to inform him,

"We are discussing next steps. The priority remains [F]elix. Let me know if you have any

ideas." *Id.* The next day, January 9, 2012, Mr. Hollingsworth replied to Mr. Simpson by email,

stating, "I have some interesting new material on this case but very little – if at all – relates to

Felix. But please call me any time so we can brainstorm this one. A lot depends on your client's

priorities and focus." *Id.*

Approximately one week later, however, on January 19, 2012, Mr. Hollingsworth sent

Mr. Simpson a follow-up email stating, "Hi Glenn. Our mutual friend Magic has obtained new

documents on Felix Vulis which detail his finances and payments he has received from ENRC,

his CV and also a copy of his service agreement and employment contract, although it is not

signed. If Felix is still of interest of [sic] you, please call me to discuss how to proceed." *Id.* ¶

49. The reference to "Magic" presumably was to Mr. Trevelyan, *see id.* ¶ 31, and the "new

documents" are likely to have been extracted from the ENRC Dataset, *id* ¶ 49. Based on

Mr. Hollingsworth's description, the "new documents" constituted or contained ENRC

Confidential and Privileged Information. *Id.*

Thereafter, on March 14 and 15, 2013, Mr. Hollingsworth emailed Mr. Simpson

inquiring if Mr. Simpson could help him obtain a letter that Mr. Hollingsworth apparently

believed the SFO had sent to ENRC. *Id.* ¶ 50. In his March 14, 2013 email, Mr. Hollingsworth

separately mentioned that he had "obtained a report by [ENRC's then counsel] to [the] SFO

dated July 2012 about their internal investigation into corruption." *Id.* Mr. Hollingsworth added

that the "report" "has been leaked and is not in the public domain." *Id.*

In response, Mr. Simpson requested—by email dated March 18, 2013—that Mr.

Hollingsworth "send [him] a copy of that report." *Id.* ¶ 51. Two days later, on March 20, 2013,

Mr. Hollingsworth emailed Mr. Simpson a document titled "ENRC Presentation to the SFO,"

which appears to be the "report" to which he had made reference in his earlier email. *Id.* ¶ 53.

Subsequent emails between Messrs. Hollingsworth and Simpson, as well as entries in Mr.

Hollingsworth's diary, indicate that Mr. Hollingsworth also disclosed ENRC Confidential and

Privileged Information to Mr. Simpson from in or about May 2013 to at least in or about July

2013:

- On April 29, 2013, Mr. Hollingsworth sent Mr. Simpson an email "to brief [him] on
  [the] latest intrigue for our projects." *Id.* ¶ 55(a). Under the heading "ENRC," Mr.
  Hollingsworth informed Mr. Simpson, among other things, that "[t]he Guardian
  [would] . . . be running a story about [a] lawsuit filed by Eurochem [a company
  unrelated to ENRC] against Shaft[] Sinkers plc and IMR (regarded as fronts for [the]

Trio).” *Id.*  Mr. Hollingsworth invited Mr. Simpson to “let [him] know if [he]

need[ed] more details on this case.” *Id.*

- Mr. Hollingsworth’s diary for May 31, 2013—approximately one month later—

  contains entries stating, “REPORTS FOR GLENN SIMPSON – ENRC[]” and

  “GLENN SIMPSON – PROJECTS + PAYMENT.” *Id.* ¶ 55(b).  Both entries have

  check marks adjacent to them.  *Id.*

- Mr. Hollingsworth’s diary for June 13, 2013 contains another entry indicating that he

  sent Mr. Simpson information relating to ENRC.  It states, “E-MAIL . . . GLENN

  SIMPSON – REPORTS” with a check mark adjacent to it.  *Id.* ¶ 55(c).  Mr.

  Hollingsworth’s diary for June 14, 2013 contains another entry with identical text.  *Id.*

- Mr. Hollingsworth’s diary for June 17, 2013, three days later, contains a similar entry,

  “E-MAIL . . . GLENN SIMPSON – . . . ENRC.” *Id.* ¶ 55(d).

- Mr. Hollingsworth’s diary for June 24, 2013 and June 27, 2013, contains entries

  stating “ENRC REPORTS . . . [call] GLEN [sic]” and “CALL . . . GLENN

  SIMPSON – DOCS,” respectively.  *Id.* ¶ 55(e).  Both entries have check marks

  adjacent to them.  *Id.*

- Thereafter, on July 1, 2013, Mr. Hollingsworth sent Mr. Simpson an email stating,

  “Glenn, Attached is a new report on ENRC, Trio and SFO.  I hope it’s useful.” *Id.* ¶

  56.

- Finally, Mr. Hollingsworth’s diary for July 8, 2013 contains an entry stating, “E-

  MAIL . . . IMR ASSETS – []GLENN.” *Id.* ¶ 57.  The reference to “IMR”

  presumably is to International Mineral Resources B.V., a company related to ENRC,

  and the reference to “GLENN” presumably is to Mr. Simpson.  *Id.*

14

Accordingly, from at least 2011 onwards, Mr. Hollingsworth provided Mr. Simpson with ENRC Confidential and Privileged Information.  *Id.* ¶ 58.

## C.     The Requested Discovery Is Sought for Use in the English Proceeding

Based on Mr. Hollingsworth's (1) receipt of ENRC Confidential and Privileged Information from Mr. Trevelyan and others and (2) apparent dissemination of such information to numerous Mr. Simpson (and others), ENRC commenced the English Proceeding against Mr. Hollingsworth for breach of confidence.  *Id.* ¶ 1; *see id.* Ex. 1 (the Complaint in the English Proceeding).[5]  To prevail on its claim for breach of confidence under English law, ENRC must show that Mr. Hollingsworth obtained information relating to ENRC that he knew or reasonably

---

[5] In connection with the investigation giving rise to the English Proceeding, a company related to ENRC and that company's agents (the "ENRC Related Company") identified, located, and conducted privileged interviews of witnesses with information relevant to ENRC's breach of confidence claim, including Messrs. Trevelyan and Hollingsworth.  Michaelson Decl. ¶ 21.  In this regard, the ENRC Related Company entered into agreements with Messrs. Trevelyan and Hollingsworth pursuant to which it retained them as consultants in relation to the foregoing (the "Consulting Agreements").  *Id.* ¶ 22.  Under the Consulting Agreements, the ENRC Related Company agreed, *inter alia*, to (1) pay them each a set monthly amount in exchange for their cooperation and agreement to assist ENRC in its investigation, and (2) release them from liability and not commence legal action against them.  *Id.* ¶ 23.  None of the consideration to be provided to Messrs. Trevelyan and Hollingsworth under the Consulting Agreements was in any way contingent on the substance of their assistance, or the outcome of any investigation (or legal proceeding).  *Id.* ¶ 24.  However, the information provided by Mr. Hollingsworth was incomplete and, accordingly, the ENRC Related Company was entitled to—and did—terminate the Consulting Agreement in accordance with its terms.  *Id.* ¶ 26.  Accordingly (and in any event), ENRC itself is within its rights to pursue a breach of confidence claim against him in the English Proceeding.  *Id.*  Nothing in this Petition is intended or should be construed as a waiver of privilege in these interviews or other communications with Messrs. Trevelyan or Hollingsworth.

should have known was confidential in nature, and that he further disclosed or otherwise misused the information. *Id.* ¶ 27.

If ENRC prevails on its breach of confidence claim, it will be entitled to relief, which may include recovery of damages or equitable compensation[6] from Mr. Hollingsworth, or an account and disgorgement of profits resulting from Mr. Hollingsworth's misuse of the confidential information. *Id.* ¶ 19. Under English law, to recover damages or equitable compensation, a plaintiff must show that it would not have suffered harm but for the defendant's breach of confidence; however, the harm suffered by the plaintiff need not have been a reasonably foreseeable consequence of the defendant's breach of confidence at the time it was committed. *Id.* Accordingly, if the defendant disclosed the plaintiff's confidential information to a third party and the third party used the information in a way that harmed the plaintiff, the plaintiff can recover damages or equitable compensation from the defendant for that harm, provided that, with benefit of hindsight and on a common sense basis, the harm can be said to have been caused by the defendant's original breach of confidence. *Id.* Therefore, if Mr. Hollingsworth is found liable for breach of confidence, he may be required to compensate ENRC for any harm resulting from his dissemination of ENRC Confidential and Privileged Information to third parties, such as Mr. Simpson, as well as any harm resulting from such third parties' use of the information or further dissemination of it to other third parties. *Id.* ¶ 20.

Pursuant to the instant Petition, ENRC seeks narrowly-tailored discovery of Mr. Simpson that is relevant to (1) Mr. Hollingsworth's liability for breach of confidence, and (2) the resulting damages/equitable compensation to which ENRC is entitled as a result of Mr. Hollingsworth's

---

[6] Equitable compensation is a monetary remedy that may be available under English law to compensate a claimant for harm suffered as a result of an equitable wrong, such as breach of confidence. *Id.* ¶ 19.

breach of confidence.  *Id.* ¶ 66.  Specifically, ENRC seeks a deposition of Mr. Simpson to explore the following topics:

- the extent to which Mr. Simpson obtained information relating to ENRC, its related companies, the Trio, or their respective business interests from Mr. Hollingsworth, including a complete accounting of what he obtained, when, for what purpose, what he did with it, and what any third parties who received it from him may have done with it;

- whether Mr. Simpson obtained information relating to ENRC, its related companies, the Trio, or their respective business interests from anyone other than Mr. Hollingsworth, including Messrs. Trevelyan and Yearsley, and if so, what he obtained, when, for what purpose, what he did with it, and what any third parties who received it from him may have done with it; and

- whether Mr. Simpson currently has any documents in his possession, custody or control relating to ENRC, its related companies, the Trio, or their respective business interests, and if so, what documents, who he obtained them from, when, for what purpose, what he has done or anticipates doing with them, and what any third parties who received the documents from him may have done with them.

*Id.* ¶ 60.

In addition, ENRC seeks the following related documents from Mr. Simpson:

- emails or other communications between Messrs. Simpson and Hollingsworth relating to ENRC, its related companies, the Trio, or their respective business interests;

- documents relating to ENRC, its related companies, the Trio, or their respective business interests that Mr. Simpson obtained from Mr. Hollingsworth;

- documents reflecting Mr. Simpson's use or further dissemination of documents or information relating to ENRC, its related companies, the Trio, or their respective business interests that Mr. Simpson obtained from Mr. Hollingsworth, as well as documents reflecting how any third parties who received such documents or information from Mr. Simpson used or further disseminated them;

- documents relating to ENRC, its related companies, the Trio, or their respective business interests that Mr. Simpson obtained from anyone other than Mr. Hollingsworth, including Messrs. Trevelyan and Yearsley, as well as documents reflecting how and from whom Mr. Simpson obtained any such documents; and

- documents reflecting Mr. Simpson's use or further dissemination of documents or information relating to ENRC, its related companies, the Trio, or their respective business interests that Mr. Simpson obtained from anyone other than Mr. Hollingsworth, as well as documents reflecting how any third parties who received such documents or information from Mr. Simpson used or further disseminated them.

*Id.* ¶ 61.

To enable ENRC to obtain the above information—which is relevant to and would be used for purposes of the English Proceeding—ENRC respectfully requests that the Court endorse the Proposed Order annexed to the Petition as Exhibit A, which grants leave, pursuant to Section 1782, to serve the subpoena annexed to the Petition as Exhibit B ("Subpoena").

## ARGUMENT

The Court should grant ENRC's application for discovery because (1) the application meets the statutory requirements for relief under Section 1782, *see infra* Part I, and (2) the factors to be weighed by the Court in exercising its discretion under Section 1782 favor granting the application, *see infra* Part II.  Moreover, as discussed previously, *see supra* n.1, Mr. Simpson will have an opportunity to challenge the Subpoena once it is served, and therefore he will not be prejudiced if ENRC's application for the requested discovery is granted *ex parte*.

## I.   ENRC SATISFIES THE STATUTORY REQUIREMENTS OF SECTION 1782

Section 1782 authorizes federal district courts to order discovery to assist applicants in obtaining evidence in the United States for use in foreign proceedings.  28 U.S.C. § 1782.  To obtain discovery under Section 1782, an applicant must satisfy three statutory requirements.  *Id.* Specifically, the applicant must show that (1) the person from whom discovery is sought "resides or is found" in this District, (2) the discovery sought is "for use" in a foreign proceeding before a "foreign or international tribunal," and (3) the application is made by a foreign or international tribunal or an "interested person."  *See, e.g.*, *Al Fayed v. United States*, 210 F.3d 421, 423 (4th Cir. 2000); *Goenechea v. Davidoff*, No. 15-cv-3384, 2016 WL 560689, at *2 (D. Md. Feb. 11, 2016); *In re Polymer Solutions Int'l, Inc.*, No. 18-cv-1864, 2019 WL 1239778, at *4 (D. Md. Mar. 18, 2019).  As shown below, ENRC's application meets each of these three requirements.

### A.   Mr. Simpson Resides and Is Found in this District

ENRC satisfies the first statutory requirement, because the party from whom discovery is sought, Mr. Simpson, both "is found" and "resides" in this District.  28 U.S.C. § 1782; *see In re Edelman*, 295 F.3d 171, 179-80 (2d Cir. 2002) (a person is "found" in a district if physically present there); *Oncology Found. v. Avanza Dev. Servs.*, LLC, No. 17-cv-1445, 2017 WL 2376769, at *1 (D. Md. May 30, 2017) (same).  Mr. Simpson is found and resides in this District

because his residence is located in Saint Leonard, Maryland, which is located in this District.

Michaelson Decl. ¶ 13.

### B.       The Discovery Sought Is for Use in a Proceeding Before a Foreign Tribunal

ENRC satisfies the second statutory requirement, because it is seeking the requested

discovery "for use" in a proceeding before a "foreign tribunal."  28 U.S.C. § 1782.  As an initial

matter, the English Court before which the English Proceeding is pending qualifies as a "foreign

tribunal."  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258 (2004) ("term

'tribunal' . . . includes . . . conventional civil, commercial, criminal, and administrative courts").

Moreover, Section 1782's "for use" requirement imposes only a "de minimis" burden on

ENRC.  *In re Veiga*, 746 F. Supp. 2d. 8, 17-18 (D.D.C. 2010) (characterizing the "for use"

requirement as imposing a "de minimis" burden on a Section 1782 applicant).  To satisfy the "for

use" requirement, ENRC need only show "that the discovery sought is relevant to the claims and

defenses in the foreign tribunal," and "the court should be 'permissive' in interpreting th[is]

standard."  *Rainsy v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1110 (N.D. Cal. 2018) (citing *In re

Veiga*, 746 F. Supp. 2d. at 17-18); *see Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) (the

party seeking discovery need only show that the discovery sought will "be employed with some

advantage or serve some use in the proceeding").  Relevance "in this context is broadly

construed and encompasses any material that bears on, or that reasonably leads to other matters

that could bear on, any issue that is or may be in the case."  *Veiga*, 746 F. Supp. 2d at 19 (citation

omitted); *In re Republic of Ecuador*, No. 10-cv-00040, 2010 WL 4027740, at *4 (E.D. Cal. Oct.

14, 2010) (requiring only that applicants show that the requested discovery has "some relevance"

to the foreign proceeding).

Consistent with the "de minimis" burden associated with the "for use" requirement, where "relevance is in doubt, the district court should be permissive." *Veiga*, 746 F. Supp. 2d at 19; *see In re Application of Sveaas*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008). Additionally, the requested discovery need not "actually, or even probably, be admissible in the foreign proceeding." *Veiga*, 746 F. Supp. 2d at 17-18 (citing cases); *see Intel*, 542 U.S at 253 ("We now hold that § 1782(a) does not impose … a [foreign discoverability] requirement."); *In re Chevron Corp.*, 753 F. Supp. 2d 536, 540 (D. Md. 2010) (same).

Here, Section 1782's "for use" requirement is satisfied, because the requested discovery is relevant to establishing both liability and damages as to Mr. Hollingsworth in the English Proceeding. *See* Michaelson Decl. ¶¶ 16, 62. The requested discovery is expected to (1) confirm that Mr. Hollingsworth disclosed ENRC Confidential and Privileged Information to Mr. Simpson; and (2) reveal what Mr. Simpson did with the ENRC Confidential and Privileged Information that he obtained from Mr. Hollingsworth, and in particular, whether he did anything with it that caused harm to ENRC. *Id*. Evidence that Mr. Hollingsworth disclosed ENRC Confidential and Privileged Information to Mr. Simpson is relevant to establishing Mr. Hollingsworth's liability for breach of confidence. *See id.* ¶ 18 (explaining that "[t]o prevail on its claim for breach of confidence . . . , ENRC must show," *inter alia*, "that Mr. Hollingsworth, without authorization, disclosed . . . ENRC Confidential and Privileged Information"). Moreover, evidence that Mr. Simpson either used or further disclosed the ENRC Confidential and Privileged Information that he obtained from Mr. Hollingsworth is relevant to determining (1) the extent of the harm caused by Mr. Hollingsworth's breach of confidence, and thus (2) the

relief due to ENRC (in the form of damages or equitable compensation) in the English Proceeding.[7]  *See id.* ¶ 19.

### C.  ENRC Is an "Interested Person" for Purposes of the Foreign Proceeding

ENRC satisfies Section 1782's final statutory requirement, because it is the plaintiff in the English Proceeding, and thus qualifies as an "interested person" under the statute.  *Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782."); *Oncology Found.*, 2017 WL 2376769, at *1 (holding that an "interested person" for purposes of Section 1782 includes a party to the foreign litigation for which the discovery is sought).

Accordingly, ENRC satisfies all three statutory elements of Section 1782, and the Court may order the requested discovery in its discretion.

### II.  THE FOUR DISCRETIONARY FACTORS ALL WEIGH IN FAVOR OF GRANTING ENRC'S REQUESTED DISCOVERY

When, as here, the Section 1782 statutory requirements are met, courts also consider four discretionary factors in deciding whether to grant discovery under Section 1782:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) the nature of the foreign tribunal, the character of the proceedings [underway abroad], and the receptivity of the foreign tribunal to United States court assistance; (3) whether the § 1782 request is an attempt to "circumvent foreign proof-gathering restrictions"; and (4) whether the documents and testimony sought are "unduly intrusive or burdensome."

*Goenechea*, 2016 WL 560689, at *3 (quoting *Intel*, 542 U.S. at 264-65); *see, e.g.*, *Chevron*, 753 F. Supp. 2d at 539.

---

[7] In addition, if the requested discovery reveals that Mr. Simpson also obtained ENRC Confidential and Privileged Information from someone other than Mr. Hollingsworth, that would potentially be relevant to, *inter alia*, the extent of the harm caused by Mr. Hollingsworth's breach of confidence.  Michaelson Decl. ¶ 62.

In considering these factors, courts exercise their discretion liberally in favor of granting discovery. *See, e.g.*, *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002), *aff'd*, 542 U.S. 241 (2004) ("[A]llowance of liberal discovery seems entirely consistent with the . . . aims of Section 1782."); *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 135 (3d Cir. 1985) ("The liberal intent to provide judicial assistance . . . has been acknowledged as a primary statutory goal since section 1782's inception."); *In re Application of Sauren Fonds-Select SICAV*, No. 16-cv-00133, 2016 WL 6304438, at *2 (D.N.J. Oct. 26, 2016) ("Congress intended § 1782 to be interpreted liberally."). Here, each of the discretionary factors weighs in favor of granting ENRC's requested discovery.

### A.    Mr. Simpson Is Not a Party to the English Proceeding

The first discretionary factor favors the applicant when the party from whom discovery is sought is not a participant in the foreign proceeding. *See Intel*, 542 U.S. at 264; *Veiga*, 746 F. Supp. 2d at 23; *see also Polymer*, 2019 WL 1239778, at *5 ("It is clear that [the person from whom discovery is sought] is not a participant in the potential [foreign] litigation. This fact alone is enough to fulfill the first *Intel* factor."); *Goenechea*, 2016 WL 560689, at *3 (finding that the first factor weighed in favor of the applicant because the subject of the proposed discovery was not "a participant in the foreign proceeding, which makes the need for § 1782 assistance greater"). Courts are more inclined to grant Section 1782 applications when the party from whom the discovery is sought is not a party to the foreign proceeding because non-parties "may be outside the foreign tribunal's jurisdictional reach; hence, their evidence . . . may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264.

Here, Mr. Simpson is not a party to the English Proceeding. Michaelson Decl. ¶ 66. Moreover, Mr. Simpson is outside the jurisdictional reach of the English Court; accordingly,

ENRC likely will be unable to obtain the requested discovery absent this Court's approval of the Petition. *Id.* Notably, even if Mr. Simpson were to assert that he is amenable to subjecting himself to discovery in the context of the English Proceeding, the Petition should be granted, because a Section 1782 applicant is not required to seek discovery first in the foreign tribunal. *See Veiga*, 746 F. Supp. 2d at 23; *see also Euromepa, S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1100 (2d Cir. 1995) (noting the lack of a "quasi-exhaustion requirement . . . that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court" (quotations omitted)).

**B.      The English Court Likely Would Be Receptive to the Requested Discovery**

In considering the second discretionary factor, courts require "authoritative proof that [the] foreign tribunal would reject [the] evidence obtained with the aid of section 1782," such as a statement from the foreign tribunal itself, before finding that the factor weighs against granting the petition. *Euromepa, S.A.*, 51 F.3d at 1100; *see Oncology Found.*, 2017 WL 2376769, at *1; *Goenechea*, 2016 WL 560689, at *3. Here, the English Court likely would be receptive to the discovery sought. Indeed, ENRC's U.K. counsel has represented that "[t]o the best of [his] knowledge and belief, the testimony and documents sought regarding Mr. Hollingsworth will be admissible in the English Proceeding." Michaelson Decl. ¶ 62.

Moreover, after researching the issue, ENRC's U.K. counsel reports that English courts (1) "[i]n principle . . . are receptive to the use of [Section] 1782 as a means for parties to English proceedings to obtain discovery," and (2) have only disapproved of Section 1782 discovery under circumstances that are distinguishable from those present here, such as when the same discovery had already been sought and denied in the English litigation. *Id.* ¶¶ 63-68 (describing

the circumstances when English courts have previously objected to Section 1782 discovery and demonstrating that those circumstances are distinguishable from the circumstances present here).

Moreover, U.S. courts "routinely allow applicants to obtain third-party Section 1782 discovery related to litigation pending in the United Kingdom." *In re IKB Deutsche Industriebank AG*, No. 09-cv-7852, 2010 WL 1526070, at *4 (N.D. Ill. Apr. 8, 2010) (citing cases and finding respondent failed to demonstrate that English courts would not be receptive to evidence obtained from Section 1782 application); *see, e.g.*, *In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 38 (2d Cir. 2017); *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 362 (S.D.N.Y. 2014); *see also In re Ex Parte Application of Global Energy Horizons Corp.*, No. 15-cv-80078, 2015 WL 1325758, at *2 (N.D. Cal. Mar. 24, 2015) (finding "no authority suggesting English government would be hostile to or otherwise reject discovery obtained through a Section 1782 subpoena").

### C.   ENRC Is Not Circumventing Any U.K. Proof-Gathering Restrictions

Courts typically weigh the third factor against the applicant only where they find that the application was brought in bad faith. *In re Chevron Corp.*, No. 10-mc-00067, 2010 WL 4883111, at *3 (W.D. Va. Nov. 24, 2010); *see In re Application of Hill*, No. 05-cv-999996, 2007 WL 1226141, at *3 (S.D.N.Y. Apr. 23, 2007) ("Absent any indication of bad faith on [the applicant's] part, the Court is 'simply unwilling to weigh the request for § 1782 assistance itself as a negative discretionary factor.'" (citation omitted)); *see also Kulzer v. Esschem, Inc.*, 390 Fed. App'x 88, 92 (3d Cir. 2010) ("The court must consider whether the litigant's motives are tainted by a surreptitious effort to bypass foreign discovery rules . . . .").

Here, ENRC seeks the requested discovery in good faith for use in the English Proceeding.  Courts in the United Kingdom historically have been open to the use of proof

gathered pursuant to Section 1782.  *See* Michaelson Dec. ¶¶ 63-69.  Moreover, (1) ENRC has demonstrated that the requested discovery is relevant to the English Proceeding, and (2) ENRC's U.K. counsel has represented that the "Petition is not an attempt to circumvent evidence-gathering restrictions in or policies of the English Court," and he "ha[s] no reason to believe that the English Court . . . would object to the discovery sought from Mr. Simpson."  *Id.* ¶¶ 62, 70. Therefore, the third factor weighs in favor of authorizing the requested discovery.

      **D.**    **ENRC's Discovery Requests Are Narrowly Tailored and Are Not Unduly Intrusive or Burdensome**

The fourth factor also weighs in favor of authorizing the requested discovery because ENRC's discovery requests are narrowly tailored and in no way "unduly intrusive or burdensome."  *See Intel*, 542 U.S. at 265.  Compliance with the Subpoena would not be "unduly intrusive or burdensome" because: (1) the requested discovery implicates a discrete universe of documents and testimony that goes to the heart of ENRC's breach of confidence claim in the English Proceeding (*i.e.*, Mr. Hollingsworth's dissemination of ENRC Confidential and Privileged Information to Mr. Simpson, and Mr. Simpson's subsequent use or further dissemination of the information); (2) based on the emails and other evidence described herein and in the accompanying declaration, Mr. Simpson likely received ENRC Confidential and Privileged Information from Mr. Hollingsworth, and likely disclosed such information to one or more third-party clients (and thus likely possesses information highly relevant to ENRC's liability and damages claims in the English Proceeding); and (3) Mr. Simpson had no right to receive, use or further disseminate the ENRC Confidential and Privileged Information.  *See Veiga*, 746 F. Supp. 2d at 25 (granting Section 1782 application where "the subject matter of the requests are reasonably tailored to speak to the claims and defenses raised in the proceeding at issue"); *Oncology Found.*, 2017 WL 2376769, at *1 (finding that the fourth *Intel* factor weighs in

favor of granting discovery under Section 1782 where the subpoena is "narrowly tailored to the issues before the foreign tribunal and, based on [petitioner's] representations, within the possession, custody and control of" the individual who petitioner seeks to serve with the subpoena).  Moreover, the relevant documents and testimony should be easily identifiable, readily accessible, and not burdensome for Mr. Simpson to produce.

As set forth above, all four discretionary factors weigh in favor of granting ENRC's Section 1782 application, and ENRC respectfully submits that the Court should therefore exercise its discretion to grant the application.

## **CONCLUSION**

For the reasons set forth above, ENRC respectfully requests that the Court endorse the Proposed Order annexed to the Petition as Exhibit A, which grants ENRC leave, pursuant to Section 1782, to serve the Subpoena annexed to the Petition as Exhibit B.

Dated: <u>December 5</u>, 2019
        Washington, D.C.

CLEARY GOTTLIEB STEEN & HAMILTON LLP

*/s/ Nowell D. Bamberger*

Nowell D. Bamberger (D. Md. Bar # 21111)
Steven J. Kaiser (D. Md. Bar # 17392)
2112 Pennsylvania Ave. NW
Washington, D.C. 20037
Tel: (202) 974-1500
Fax: (202) 974-1999
nbamberger@cgsh.com
skaiser@cgsh.com

MORVILLO ABRAMOWITZ GRAND IASON &
    ANELLO P.C.

Robert J. Anello (*pro hac vice* application
forthcoming)
Christopher B. Harwood (*pro hac vice* application
forthcoming)
565 Fifth Avenue
New York, New York 10017
Tel: (212) 856-9600
Fax: (212) 856-9494
ranello@maglaw.com
charwood@maglaw.com

*Counsel for Petitioner Eurasian Natural
Resources Corporation Limited*

28